UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| STEPHEN L. STRAIN, | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-365 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Veteran Stephen Strain suffers from over a dozen physical and mental impairments, some of which are severe. He applied for social security disability benefits, claiming that he was no longer able to work as of January 1, 2009, but the Commissioner denied his application. Strain filed this action seeking review of that decision. For the following reasons, the Court reverses and remands this action for further proceedings.

### I. FACTUAL BACKGROUND

Since early 2009, Strain has continuously been treated by the health administration of the U.S. Department of Veterans Affairs for chronic pain in his knees and mental illnesses, including depression, post-traumatic stress disorder, and a history of suicide attempts. He also suffers from severe obesity and back pain, along with liver, kidney, and colon problems, hearing loss, high blood pressure, dyslipidemia, right hip and foot pain, allergies, acid reflux, migraines, tremors, and a history of polysubstance abuse. Strain regularly uses a cane to ambulate and takes a long list of medications to help with his symptoms. Strain's emotional support dog accompanies Strain everywhere and has been "an integral part" of Strain's improvement.

The only consultative examinations of record occurred in May 2016 (Tr. 452-64). Those examinations revealed in relevant part that Strain had poor concentration, memory problems, difficulty with social interactions, and an inability to walk more than short distances up to three or four hours in an entire day (while frequently alternating between sitting and standing). Thereafter, state reviewing agents opined that Strain was capable of performing the exertional tasks required of medium work (Tr. 93-116).

Ultimately, the ALJ agreed with the reviewing agents in that Strain's impairments did not prevent him from performing medium work (with few physical restrictions) that could only involve simple instructions and work-related decision-making with occasional interactions with others. Based on testimony from a vocational expert ("VE"), the ALJ concluded that a person with that residual functional capacity would still be able to perform work as a dining room attendant, prep cook, and kitchen helper. The VE testified that consistent with the Dictionary of Occupational Titles, these jobs existed in significant numbers. Given the VE's testimony, the ALJ found that Strain was not disabled and denied his claim. The Appeals Council denied review, so Strain filed this action, asking that the Commissioner's decision be reversed with either an award of benefits or remanded for further proceedings.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance."

*Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential

3

evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). This appeal concerns the ALJ's assessment of Strain's RFC and credibility.

In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, including testimony by the claimant, as well as evidence regarding

limitations that are not severe. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to her findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski*, 245 F.3d at 888. Nevertheless, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Golembiewski*, 322 F.3d at 917. Instead, an ALJ need only minimally articulate her justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

In this case, the Court agrees with Strain's counsel that in assessing the RFC, the ALJ failed to consider evidence favoring Strain. Specifically, the ALJ did not discuss Strain's most recent functional capacity evaluation completed in July 2016 by the VA, which indicated that Strain would be unable to perform work at the medium exertional level (Tr. 1001-02). In particular, the report notes that Strain was diagnosed with bilateral knee pain, right hip pain, and low back pain, and that his current activity level was reported as "sedentary." The examination of Strain revealed that he was unable to use his legs and feet for repetitive movements and unable to use his low back for flexing or rotating at least five times. Strain's ability to stand was rated as "fair to poor," and it was documented that he required a cane to ambulate for up to one or two blocks. Strain could only sit for twenty minutes, stand for ten minutes, and walk for fifteen minutes, and he was unable to crouch or squat to pick-up a box from the floor. The assessment was signed by physical therapist, Bill Vanderbosch, and co-signed by nurse practitioner, Jessica Glassman.

The Commissioner attempts to explain away the ALJ's failure to acknowledge this evidence because it was not provided by an actual physician. However, this argument is without

merit because ALJs must consider therapist and nurse practitioners' opinions on the severity of a patient's impairments. *See* 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. §§ 404.1502(d), 404.1513, 404.1527(b), (c) ("[r]egardless of its source, we will evaluate every medical opinion we receive."). In addition, the regulations set out factors that the ALJ must consider in weighing medical opinions from treating sources, non-treating sources, and non-examining sources. *See* 20 C.F.R. § 404.1527(c).

In this case, the ALJ never mentioned the July 2016 functional capacity assessment conducted by the VA, and the ALJ never indicated the amount of weight she assigned to the opinion pursuant to the regulatory factors under 20 C.F.R. § 404.1527(c). Such an incomplete analysis of evidence favoring Strain does not permit a means for adequate review. This is especially true when the medical opinions that the ALJ *did* rely heavily upon as being consistent with Strain's ability to perform medium work, were those of the reviewing state agents which could not have taken into account the subsequent July 2016 assessment. Moreover, the reviewing agents did not have access to later treatment notes indicating that Strain continued to complain of "[i]ncreased pain with standing for longer periods of time, affecting normal daily activities"—for which, it was recommended that Strain undergo physical therapy twice a week for six weeks (Tr. 999-1000). Despite this additional evidence, it does not appear that the ALJ had an RFC assessment conducted by any medical professional in order to determine whether the RFC might change. *See Staggs v. Astrue*, 781 F.Supp.2d 790, 794–96 (S.D. Ind. 2011) (finding that the medical record omitted from review provided "significant substantive evidence" regarding the claimant's medical impairments and that any medical opinion rendered without taking this record into consideration was "incomplete and ineffective.").

The ALJ also failed to consider the consistency of the VA's July 2016 assessment with the report from the consultative physician, Dr. Scott Ehmen, whose physical examination of Strain produced results that cut against the ALJ's RFC conclusion (Tr. 457-64). Specifically, Dr. Ehmen's May 2016 examination revealed that Strain presented with joint pain, swelling, and stiffness, back pain, muscle weakness, and loss of balance. Strain's gait was noted to be "limping and ataxic without a cane" and he moved slowly with poor balance. It was reported that Strain could not bend over, could only occasionally lift thirty pounds, and was unable to squat or climb. Dr. Ehmen opined that Strain could stand/walk at least two hours in a workday, but he must frequently alternate between sitting and standing. Thus, Dr. Ehmen's CE report corroborated the VA's July 2016 assessment and undermines the RFC finding that Strain could perform medium work involving occasional balancing, stooping, kneeling, crouching, and crawling. Because of these errors and the Court's inability to discern whether the ALJ considered the record as a whole, substantial evidence does not support the RFC finding and the case must be remanded for reconsideration of her opinion. *See, e.g.*, *Zurawski,* 245 F.3d at 888.

A few more significant shortcomings are worth mentioning. The ALJ's opinion deemed Strain's obesity a severe impairment (Tr. 16). The ALJ then broadly indicated that "the claimant's severe obesity (with a body mass index in the mid 30's) has been considered . . . in assessing the claimant's residual functional capacity" pursuant to Social Security Ruling 02-1p (Tr. 18). But the cursory conclusion of the ALJ does not specify the effect that obesity (either by itself or in combination with Strain's other impairments) has upon Strain's ability to perform routine and necessary work movements or to sustain full-time work. The ALJ was required to "articulate at some minimal level [her] analysis of the evidence" with respect to Strain's obesity and its believed limiting effects in order to permit an informed review. *Zurawski*, 245 F.3d at 887

(citation omitted). Strain's medical records consistently document his obesity, along with his suffering from chronic knee pain, thus it appears unavoidable that Strain's weight of over 230 pounds has a serious impact on his ability to function and perform medium work. Consequently, the ALJ's decision cannot stand since it lacks an adequate discussion of the issue relative to Strain's obesity. *Lopez*, 336 F.3d at 539. On remand, the ALJ will need to address the degree to which Strain is capable of performing work given his severe obesity (and the fact that he has regularly been using a cane since 2009).

Finally, in assessing Strain's credibility on remand, the ALJ should take care not to discount Strain's complained of limitations based on his not seeking further surgical intervention with respect to his knees, without first considering Strain's explanation that the doctors indicated surgery was not an option (Tr. 253, 464). *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016) (noting that the ALJ erred by basing his adverse credibility determination on the claimant's decision not to undergo surgery without inquiring into the reasons for doing so). Moreover, while the ALJ discounted Strain's complaints of significant memory issues because the VA didn't report significant deficits in memory function (Tr. 21-22), the ALJ failed to acknowledge that the consultative examining psychologist, Dr. Heath Fervida, remarked that "[significant] complications [with memory] were evident . . . however, a more thorough evaluation of memory with memory testing would be needed to determine true memory deficits" (Tr. 455). The ALJ will have the opportunity on remand to consider whether such additional memory testing is necessary in light of this record evidence. Further, the ALJ never bothered to explain whether she credited Strain's asserted need to be accompanied by his service dog. This is a significant omission given the VE's testimony that the dog's presence would preclude employment (and certainly would preclude work involving food preparation).

Ultimately, the insufficiently supported RFC finding led the ALJ to ask hypotheticals of the VE which omitted claimed (and potentially credible) limitations caused by Strain's well-documented physical and mental health problems. For this reason, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Strain is capable of performing.[1] *See Young*, 362 F.3d at 1003-05 (the ALJ must determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC typically skews questions posed to the VE); SSR 96-8p. Thus, until the hypotheticals presented to the VE include the functional limits that the ALJ accepts as credible, and the ALJ adequately explains the claimant's actual limitations and resulting RFC based on the relevant medical evidence, 20 C.F.R. §§ 404.1545, 404.1546(c), step five cannot be affirmed in this appeal. *See Young,* 362 F.3d at 1003-05. The remedy for the shortcomings noted herein is further consideration, not an award of benefits as requested by Strain's counsel.

## IV.  CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to enter judgment accordingly.

---

[1] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)).  This exception does not apply here, since the VE never indicated having reviewed Strain's medical records, nor did she indicate in her responses having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical person posed by the ALJ, and not on the record itself or the limitations of the claimant himself. *Id*. (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).

SO ORDERED.

ENTERED: September 12, 2018

                                                        /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court